UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID ARONSTEIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THOMPSON CREEK METALS COMPANY, INC., et al.,<br><br>    Defendant. | No. 3:14-cv-00201 (MPS) |

## RULING ON MOTION TO TRANSFER VENUE

Plaintiffs David Aronstien and Lesley Stroll ("Plaintiffs") brought this state-law securities fraud action against Defendants Thompson Creek Metals Company Inc. ("TCM"), Kevin Loughrey ("Loughrey"), Pamela Saxton ("Saxton"), Pamela Solly ("Solly"), James L. Freer ("Freer"), James P. Geyer ("Geyer"), Timothy J. Haddon ("Haddon"), Thomas J. O'Neil ("O'Neil"), Denis C. Arsenault ("Arsenault"), Wendy Cassity ("Cassity"), and Carol T. Banducci ("Banducci") (collectively "Defendants"). After Defendants filed a motion to dismiss [Dkt. # 29] and motion to transfer venue [Dkt. # 35], Plaintiffs amended their complaint in June 2014, alleging securities fraud under the Connecticut Uniform Securities Act (Conn. Gen. Stat. § 36b-4 and §36b-29), fraud and intentional misrepresentation, and negligent misrepresentation. (Amend. Compl. [Dkt. # 60].) TCM, Loughrey, Saxton, Solly, Freer, Haddon, and Cassity (collectively "Moving Defendants") renewed their motion to transfer this action to the United States District Court for the District of Colorado under 28 U.S.C. § 1404(a) [Dkt. # 64]. Moving Defendants also moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6) for lack of personal jurisdiction, improper venue, insufficient service (on Loughrey and Freer), and failure to state a claim [Dkt. # 61]. Finally, Defendants

1

moved to stay discovery [Dkt. # 66] pending the motion to dismiss and the motion to transfer, and requested that the Court take judicial notice of certain documents [Dkt. # 69].

For the reasons set forth below, the Court grants Defendants' motion to transfer this action to the District of Colorado and denies all remaining motions as moot.

## I.   BACKGROUND

Plaintiffs, private investors, are citizens of Connecticut who purchased TCM's stock through a 401(k) plan called Tri-State Modeling LLC. (Amend. Compl. [Dkt. # 60] at 1, 3.) Plaintiffs purchased $6,314,303 worth of shares of TCM common stock in several transactions beginning in March 2011, and they liquidated their shares in May 2012 (the "Relevant Period"). (*Id*. at 5, 22.)

TCM is a publicly traded Canadian mining corporation, with its principal place of business in the United States in Littleton, Colorado. (*Id.* at 1, 5.) Before purchasing gold and copper property in July 2010, TCM was a molybdenum[1] mining and refining company. (*Id.* at 8.)

With the exception of Freer, who is a citizen of the state of Washington, all Moving Defendants are citizens of Colorado. (*Id*. at 2.) Loughrey was Chief Executive Officer of TCM during the Relevant Period. Saxton was TCM's Executive Vice President and Chief Financial Officer during the Relevant Period, and still is. (*Id.* at 3.) Solly was Director and Head of Investor Relations at TCM during the Relevant Period, and still is. Freer, Geyer, Banducci, Haddon, O'Neil, and Arsenault were members of the Board of Directors (the "Board") of TCM during the Relevant Period. Haddon is the current Chairman of the Board. Finally, Cassity was

---

[1] "Molybdenum (Mo) is a refractory metallic element used principally as an alloying agent in steel, cast iron, and superalloys to enhance hardenability, strength, toughness, and wear and corrosion resistance." U.S. Geological Survey – Molybdenum Statistics and Information, *available at* http://minerals.usgs.gov/minerals/pubs/commodity/molybdenum/ (last visited January 14, 2015).

Vice President, General Counsel, and Secretary of TCM during the Relevant Period, and still is. (*Id*. at 3-4.)

Plaintiffs allege that Defendants made material false statements and omissions in their public filings, disclosures, press releases, investor conference calls, and e-mails and phone conversations with Plaintiffs. (*Id.* at 5.) Plaintiffs allege that they suffered losses of $3,225,429 (*Id.* at 23.) The Amended Complaint [Dkt. # 60] contains three causes of action against Defendants: 1) securities fraud under the Connecticut Uniform Securities Act (Conn. Gen. Stat. § 36b-4 and §36b-29), 2) fraud and intentional misrepresentation, and 3) negligent misrepresentation.

## II.    DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district where it could have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." In deciding a motion to transfer venue, the Court must first address the threshold question of whether the action could have been brought originally in the district to which the movant seeks to transfer the case. 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the District of Colorado. (Pls.' Opp. Br. [Dkt. # 72] at 4.)

Next, the Court must determine whether the transfer promotes the convenience of the parties and the interest of justice. The movant has the burden of making "a clear and convincing showing" of the desirability of transfer. *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir. 1950)). The Court has broad discretion to make such a determination, and may consider factors such as:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of

process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006). Courts also consider two additional factors: (8) "the forum's familiarity with the governing law"; and (9) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006). "There is no rigid formula for balancing these factors and no single one of them is determinative in what is essentially an equitable task left to the Court's discretion." *Two's Co. v. Hudson*, No. 13-CV-3338-NSR, 2014 WL 903035, at *8 (S.D.N.Y. Mar. 6, 2014) (internal quotation marks and citations omitted).

### A. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) (internal quotation marks and citations omitted). "To determine the 'locus of operative facts,' a court must look to the site of the events from which the claim arises." *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003) (internal quotation marks and citations omitted).

Plaintiffs argue that Connecticut is a more appropriate forum because Defendants transmitted their alleged misrepresentations into Connecticut—where Plaintiffs received them—by telephone, email, or through TCM's website, Plaintiffs "ran their analytical models" in Connecticut, and the "site of the tortious injury" was Connecticut. (Pls.' Opp. Br. [Dkt. # 72] at 5-6.) This is not controlling, however. "Misrepresentations and omissions are deemed to 'occur' in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *Adair v. Microfield Graphics, Inc.*, No. 00 CIV. 0629 (MBM),

4

2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000); *In re Stillwater Min. Co. Sec. Litig.*, No. 02 CIV. 2806 (DC), 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (concluding that Montana—where Defendant's offices, officers, and employees were located—was the locus of operative facts in a federal securities fraud class action). "There is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered. Nevertheless, as a practical matter, such transfers are routine." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (internal citations omitted). Thus, the locus of operative facts is the District of Colorado, "the state where the allegedly inaccurate financial statements [and most of the other communications at issue] were created and audited." *Bankers' Bank Ne. v. Ayer*, No. 3:11CV262 JBA, 2012 WL 1067677, at *8 (D. Conn. Mar. 30, 2012).

### B. Plaintiffs' choice of forum

"[A] plaintiff's choice of forum is given great weight." *Jones*, 463 F. Supp. at 274. (internal quotation marks and citations omitted). "That presumption is even stronger where the chosen forum is also the plaintiff's home." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). Here, both Plaintiffs reside in Connecticut and chose the District of Connecticut as the forum. "A plaintiff's choice of forum receives less deference, however, when the locus of operative facts is elsewhere." *Open Solutions Inc. v. Granite Credit Union*, No. 3:12-CV-1353 RNC, 2013 WL 5435105, at *4 (D. Conn. Sept. 29, 2013). Because the Court has found that the locus of operative facts is in the District of Colorado, the Plaintiffs' choice of the District of Connecticut is given less weight.

### C. Convenience of Witnesses

"In most cases, the convenience of the party and non-party witnesses is the most important factor in the analysis under § 1404(a)." *Barge v. Daily Journal Corp.*, No. 95 CIV. 8135 (MBM), 1996 WL 434561, at *3 (S.D.N.Y. Aug. 2, 1996) (internal quotation marks and citations omitted). The moving party "must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum" *McGraw-Hill Companies Inc.*, 2014 WL 988607, at *7, and "make a general statement of what their testimony will cover." *Charter Oak Fire Ins. Co.,* 294 F. Supp. at 220. "The Court is to assess not just the number of witnesses, but also the materiality of their proposed testimony." *McGraw-Hill Companies Inc.,* 2014 WL 988607, at *7.

Plaintiffs contend that they "are currently in talks" with a potential expert witness from New York who could speak about loss causation. (Pls.' Mem. Opp. Mot. Transfer Venue [Dkt. # 72] at 4.) Defendants correctly point out that "[t]he convenience of expert witnesses has little or no significance in determining whether an action should be transferred under 28 U.S.C. § 1404(a)." *Scheinbart v. Certain-Teed Products Corp.*, 367 F. Supp. 707, 709-10 (S.D.N.Y. 1973).

Plaintiffs also "may have to call" a New Jersey resident "who helped design some of the computer software that [Mr.] Aronstein used in his valuation models." (Pls.' Mem. Opp. Mot. Transfer Venue [Dkt. # 72] at 4.) In addition, Plaintiffs "may have to call" another New York resident who "also had knowledge of [Mr.] Aronstein's analytical methods with regards to TCM." (*Id.*) Plaintiffs only speculate that they "may have to call" these two fact witnesses—neither of whom live in Connecticut—to speak about Mr. Aronstein's valuation models, and offer no explanation as to why Mr. Aronstein himself could not supply this testimony, or, for that

matter, why this testimony would be relevant. Because Plaintiffs' two fact witnesses would not testify about Defendants' alleged false statements and misrepresentations, their testimony is not especially material, if it is relevant at all.

Defendants "will call as witnesses officers, directors and employees of Thompson Creek who have personal knowledge regarding the preparation and contents of the company's public filings, investor disclosures, and other communications that allegedly contained 'misrepresentations.'" (Defs.' Reply Br. [Dkt. # 74] at 3.) Only one of the witnesses Defendants specifically described, Scott Shellhaas ("Mr. Shellhaas"), TCM's Chief Operating Officer since 2009 and President since May 2011, is a non-party witness. According to Defendants, Mr. Shellhaas, who also lives in Colorado, will testify about TCM's business affairs and the Endako Mine Expansion. (*Id.*) The Endako Mine Expansion was a joint project between TCM and another company, and in Plaintiffs' complaint, they allege that TCM "made a material misrepresentation" about TCM's obligation to pay for significant cost overruns for the Endako Mine Expansion. (Amend. Compl. [Dkt. # 60] at 9-10.) Therefore, the testimony of Defendants' one non-party witness in Colorado appears to be more material to the legal issues in the case than Plaintiffs' two speculative, non-party witnesses, neither of whom reside in Connecticut. Moreover, to the extent that other employees of TCM would need to testify, they are located in Colorado. Thus, this factor weighs in favor of transfer.

### D. Convenience of the Parties

Four of the five Moving Defendants reside in the District of Colorado, and TCM's headquarters in the United States is in the District of Colorado. TCM has no offices in the District of Connecticut. (Defs.' Mem. Mot. Transfer [Dkt. # 65] at 3.) Defendants intend to call parties—and Colorado residents—Loughrey, Saxton, Cassity, and Solly as witnesses to discuss

the mine expansions, financial agreements, and their public filings, financial disclosures, investor presentations, and communications with the Plaintiffs. (Defs.' Reply Br. [Dkt. # 74] at 3.) The two Plaintiffs, who are residents of Connecticut, also plan to testify, although it appears that the testimony of one of the Plaintiffs, who is not alleged to have had any direct dealings with Defendants, would be limited to damages issues. (Pls.' Opp. Br. [Dkt. # 72] at 4.) With twice as many party witnesses residing in Colorado as Connecticut, "the balance of conveniences tips in favor of transfer." *Purcell Graham, Inc. v. Nat'l Bank of Detroit*, No. 93 CIV. 8786 (MBM), 1994 WL 584550, at *5 (S.D.N.Y. Oct. 24, 1994).

### E.  Location of Documents and Ease of Access to Sources of Proof

The location of documents weighs slightly in favor of transfer. *See In re Stillwater Min. Co. Sec. Litig.*, 2003 WL 21087953, at *5. Most of the material documents in this case will likely consist of the allegedly fraudulent communications—TCM's financial statements and related documents—all or most of which are likely kept in Colorado, where TCM's United States headquarters is located. "Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co.,* 294 F. Supp. at 221.

### F.  Availability of Process to Compel Unwilling Non-Party Witnesses

Because neither party argues that it will need to compel non-party witnesses, this factor is neutral. (Pls.' Opp. Br. [Dkt. # 72] at 6.)

### G.  Relative Means of the Parties

Plaintiffs argue that TCM "is a large multinational corporation, with significant financial resources," and it has hired local counsel to represent it in Connecticut. (Pls.' Opp. Br. [Dkt. # 72] at 6.) Plaintiffs, who are *pro se,* contend that they "lack the financial wherewithal to hire

competent counsel" and "have limited resources with which to contest this action." (*Id.*) Plaintiffs also claim that they "will be placed in serious financial jeopardy if they are forced to litigate this action in Colorado" due to their employment as consultants paid on hourly or daily bases. (*Id.* at 5.) But Plaintiffs make "no showing of financial hardship that would prevent [them] from fully litigating this case" in the District of Colorado. *Ring v. Executive Jet Aviation, Inc.*, No. 01 CIV. 738 (DLC), 2001 WL 492428, at *3 (S.D.N.Y. May 8, 2001) ("The fact that plaintiff resides in New York and is bringing this action *pro se* is in itself insufficient to shift the balance in favor of keeping the action in the Southern District of New York."). Plaintiffs do not claim that they are impoverished, and they did not file their complaint *in forma pauperis*. *See Barge,* 1996 WL 434561, at *5 (finding that the factor weighed decidedly in favor of Plaintiff's choice of forum where Plaintiff claims that he is impoverished and filed his complaint *pro se* and *in forma pauperis*.) Furthermore, even if the Court were to deny the motion to transfer and the case were to proceed in Connecticut, Plaintiffs would still likely have to make multiple trips to Colorado to depose the individual defendants. *See* Fed. R. Civ. P. 45(c)(1).[2] Thus, this factor is neutral.

### H. Familiarity with Governing Law

This case involves only state securities fraud claims under the Connecticut Uniform Securities Act, and common law claims of fraud, intentional misrepresentation, and negligent misrepresentation. Plaintiffs argue that the District of Connecticut is a more appropriate forum than the District of Colorado because Connecticut courts are more familiar with Connecticut law.

---

[2] Fed. R. Civ. P. 45(c)(1) provides:
> A subpoena may command a person to attend a trial, hearing, or deposition only . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

"However, the possibility that the law of another jurisdiction governs the case is a factor accorded little weight on a motion to transfer, especially where no complex questions of foreign law are involved." *Morgan Guar. Trust Co. of New York v. Tisdale*, No. 95 CIV. 8023 (BSJ), 1996 WL 544240, at *7 (S.D.N.Y. Sept. 25, 1996). "[F]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 132 (D. Conn. 1998). Thus, this factor is neutral.

## I.  Trial Efficiency and the Interest of Justice

The parties dispute whether the District of Connecticut has personal jurisdiction over all of the Defendants in this matter. While the Court has not decided the motion to dismiss, it has reviewed the papers and it notes that as to at least three of the individual Defendants—Freer, Haddon, and Cassity—there appears to be especially strong arguments for dismissal due to lack of personal jurisdiction.

> The law of the forum state governs the exercise of *in personam jurisdiction* in a diversity suit. Personal jurisdiction in diversity requires a two[-]step inquiry. First, it must be determined whether defendant's conduct satisfies the requirements of the long-arm statute of the forum state. Second, if it does, it must be determined whether the exercise of jurisdiction comports with the due process clause of the fourteenth amendment. Plaintiff must establish personal jurisdiction by a preponderance of the evidence.

*Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 22-23 (D. Conn. 1994) (internal citations omitted).

The Connecticut long arm statute applicable to nonresident individuals, Conn. Gen. Stat. Ann. § 52-59b, provides, in relevant part:

> a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of

>  conduct, or derives substantial revenue from goods used or consumed or services
>  rendered, in the state, or (B) expects or should reasonably expect the act to have
>  consequences in the state and derives substantial revenue from interstate or
>  international commerce; (4) owns, uses or possesses any real property situated
>  within the state; or (5) uses a computer . . . or a computer network . . . located
>  within the state.
>
>  Haddon and Cassity reside in Colorado and Freer resides in the state of Washington.

(Freer Decl. [Dkt. # 42] ¶ 4; Cassity Decl. [Dkt. # 34] ¶ 4; Haddon Decl. [Dkt. # 31] ¶4.) None of them regularly conducts business in Connecticut, owns property in Connecticut, or has offices, bank accounts, telephone numbers, or employees in Connecticut. (Freer Decl. [Dkt. # 42] ¶¶ 5-6, 8; Haddon Decl. [Dkt. # 31] ¶¶ 6-9; Cassity Decl. [Dkt. # 34] ¶¶ 5-7.) Finally, Freer, Haddon, and Cassity never knowingly contacted or communicated with Plaintiffs (Freer Decl. [Dkt. # 42] ¶ 7; Haddon Decl. [Dkt. # 31] ¶ 11; Cassity Decl. [Dkt. # 34] ¶ 10), and Plaintiffs do not allege otherwise. Further, in their brief opposing the motion to dismiss, Plaintiffs do not offer any argument or analysis as to why the Court would have jurisdiction over these three individuals— other than to claim, in conclusory fashion, that they were "co-conspirators." (Pls.' Mem. Opp. to Mot. Dismiss [Dkt. # 73] at 6.) There is nothing in the record to suggest that any of these three defendants had anything to do with Connecticut[3] or ever had any dealings with Plaintiffs. Thus, even if this Court has jurisdiction over the remaining Defendants—an issue on which the Court expresses no opinion—it very likely lacks jurisdiction over Freer, Haddon and Cassity. In that event, the case would have to be split into two and litigated in both Colorado and Connecticut, which would waste judicial resources. Neither party argues that the District of Colorado lacks personal jurisdiction over the Defendants. *See The Katiroll Co. v. Kati Roll & Platters, Inc.*, No.

---

[3] Haddon's declaration mentions one role that is tangentially related to Connecticut. Separate from his role at TCM, Haddon is President and Director of the Tim and Mary Haddon Family Foundation, which is organized under the law of the state of Delaware. "Foundation Source, a company headquartered in Fairfield, Connecticut, provides administrative services, online management tools, and philanthropic advisory services to this private foundation." (Haddon Decl. [Dkt. # 31] ¶ 5.) Haddon's role in the Tim and Mary Haddon Family Foundation has not required that he travel to Connecticut or conduct any business in Connecticut. (*Id*.)

10 CIV. 1703 LTS RLE, 2010 WL 2911621, at *5 (S.D.N.Y. July 9, 2010) ("If the issue of whether the transferor court has personal jurisdiction over the defendant is a difficult one, transfer to a district where jurisdiction is certain may be in the interest of justice because it may conserve judicial resources.").

On balance, the Court finds that transferring this case to the District of Colorado would advance the administration of justice and that retaining the case in this Court would likely hinder it. In light of the Court's assessment of the totality of the material circumstances, transfer of this case to the District of Colorado is warranted.

### III.     CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to transfer venue to the District of Colorado. Therefore, the Court denies the Defendants' other motions [Dkts. ## 61. 66, and 69] as moot. The Clerk of the Court is directed to transfer this case to the District of Colorado.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           January 16, 2015